Laurie Edelstein (CA Bar #164466)
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
Facsimile: (415) 365-6699
ledelstein@steptoe.com

James R. Nuttall (*pro hac vice* to be filed)
Michael Dockterman (*pro hac vice* to be filed)
Katherine H. Johnson (*pro hac vice* to be filed)
Tron Fu (*pro hac vice* to be filed)
Robert F. Kappers (*pro hac vice* to be filed)
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Telephone: (312) 577-1300
Facsimile: (312) 577-1370
jnuttall@steptoe.com
mdockterman@steptoe.com
kjohnson@steptoe.com
tfu@steptoe.com
rkappers@steptoe.com

Christopher A. Suarez (*pro hac vice* to be filed)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile:  (202) 429-3902
csuarez@steptoe.com

Timothy Devlin (*pro hac vice* to be filed)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff Express Mobile, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EXPRESS MOBILE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) **COMPLAINT FOR PATENT** |
| ADOBE INC. d/b/a ADOBE SYSTEMS | ) **INFRINGEMENT** |
| INCORPORATED AND | ) |
| X.COMMERCE INC. d/b/a MAGENTO, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Defendants. | ) |
| | ) |

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Express Mobile, Inc. ("Express Mobile" or "Plaintiff"), by its attorneys, demands a trial by jury on all issues so triable and for its Complaint against Adobe, Inc. d/b/a Adobe Systems Incorporated ("Adobe") and X.Commerce Inc. d/b/a Magento ("Magento"), which alleges the following:

**NATURE OF THE ACTION**

1.     This action arises under 35 U.S.C. § 271 for Adobe's infringement of Express Mobile's United States Patent Nos. 6,546,397 ("the '397 patent"), 7,594,168 ("the '168 patent"), 9,063,755 ("the '755 patent"), 9,471,287 ("the '287 patent"), and 9,928,044 ("the '044 patent") (collectively the "Patents-In-Suit"), and for Magento's infringement of the '755 patent, '287 patent, and '044 patent.

**THE PARTIES**

2.     Plaintiff Express Mobile, Inc. is an inventor-owned corporation organized under the laws of the State of Delaware with a place of business at 38 Washington Street, Novato, CA 94947.

3.     Adobe Inc. ("Adobe") is a corporation organized and existing under the laws of Delaware, and is a resident of this District with its principal place of business at 345 Park Avenue, San Jose, CA 95110-2704.  Adobe may be served through its registered agent for service in California, Karen Robinson, 345 Park Avenue, San Jose, CA 95110.

4.     X.Commerce Inc. ("Magento") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 345 Park Avenue, San Jose, CA 95110-2704.  Magento may be served through its registered agent for service in California, CSC – Lawyers Incorporating Service (C1592199), 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833--3502.

5.     On May 21, 2018, Adobe announced its plans to acquire Magento, and Adobe's acquisition of Magento was completed on June 19, 2018. (*See* https://news.adobe.com/news/news-details/2018/Adobe-to-Acquire-Magento-Commerce/default.aspx; https://news.adobe.com/news/news-details/2018/Adobe-Completes-

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

Acquisition-of-Magento-Commerce/default.aspx).  Today, Magento is a wholly-owned subsidiary of Adobe.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      On information and belief, jurisdiction and venue for this action are proper in the Northern District of California.

8.      This Court has personal jurisdiction over Adobe because it has purposefully availed itself of the rights and benefits of the laws of this State and this Judicial District.  On information and belief, Defendant resides in the Northern District of California by maintaining its principal place of business at 345 Park Avenue, San Jose, CA 95110-2703.  This Court also has personal jurisdiction over Adobe because it has done and is doing substantial business in this Judicial District, both generally and, on information and belief, with respect to the allegations in this complaint, including Adobe's one or more acts of infringement in this Judicial District.

9.      This Court has personal jurisdiction over Magento because it has purposefully availed itself of the rights and benefits of the laws of this State and this Judicial District.  On information and belief, Defendant resides in the Northern District of California by maintaining its principal place of business at 54 N. Central Ave., Suite 200, Campbell CA 95008.  This Court also has personal jurisdiction over Magento because it has done and is doing substantial business in this Judicial District, both generally and, on information and belief, with respect to the allegations in this complaint, including Magento's one or more acts of infringement in this Judicial District.

10.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and § 1400(b).   Adobe has committed acts of infringement through sales of its infringing products in the Northern District of California and has a principal place of business in this district.  Likewise, Magento has committed acts of infringement through sales of its infringing products in the Northern District of California and has a principal place of business in this district.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

Additionally, both Adobe and Magento have regular and established places of business in the Northern District of California.

## THE PATENTS-IN-SUIT

11.     Plaintiff is the lawful owner of all rights, title, and interest in United States Patent No. 6,546,397 entitled "Browser Based Web Site Generation Tool and Run Time Engine," including the right to sue and to recover for infringement thereof.  The '397 patent was duly and legally issued on April 8, 2003, naming Steven H. Rempell as the inventor. A true and correct copy of the '397 patent is attached as Exhibit A.

12.     The inventions of the '397 patent solve technical problems related to website creation and generation.  For example, the inventions enable the creation of websites through browser-based visual editing tools such as selectable settings panels which describe website elements, with one or more settings corresponding to commands. These features are exclusively implemented utilizing computer technology including a virtual machine.

13.     The claims of the '397 patent do not merely recite the performance of some pre-Internet business practice on the Internet.  Instead, the claims of the '397 patent recite inventive concepts that are rooted in computerized website creation technology, and overcome problems specifically arising in the realm of computerized website creation technologies.

14.     The claims of the '397 patent recite inventions that are not merely the routine or conventional use of website creation systems and methods.  Instead, the inventions teach a browser-based website creation system and method in which the user-selected settings representing website elements are stored in a database, and in which said stored information is retrieved to generate said website.

15.     The technology claimed in the '397 patent does not preempt all ways of using website or web page authoring tools nor any other well-known prior art technology.

16.     Accordingly, each claim of the '397 patent recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

17.     In Case No. 3:18-CV-04679-RS, a case filed in the Northern District of California, the defendant in that action, Code and Theory LLC. brought a Motion to Dismiss Plaintiff's Complaint asserting that the '397 patent and U.S. Patent No. 7,594,168 (asserted in Count II below) are not subject matter eligible under 35 U.S.C. § 101 as a matter of law.  (Case No. 3:18-CV-04679-RS Dkt.35). Subsequent briefing included Plaintiff Express Mobile, Inc.'s Opposition to Defendant Code and Theory LLC's Motion to Dismiss Plaintiff's Complaint (Case No. 3:18-CV-04679-RS Dkt.40), and Motion to Dismiss Plaintiff's Complaint [sic] (Case No. 3:18-CV-04679-RS Dkt.41). Each of those filings is incorporated by reference into this Complaint.

18.     In C.A. 2:17-00128, a case filed in the Eastern District of Texas, the defendant in that action, KTree Computer Solutions brought a Motion for Judgment on the Pleadings asserting that the '397 patent and U.S. Patent No. 7,594,168 (asserted in Count II below) were invalid as claiming abstract subject matter under 35 U.S.C. § 101.  (C.A. 2:17-00128 Dkt. 9.)  Subsequent briefing included Plaintiff's Response and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 17, 22-24), KTree's Reply (C.A. 2:17-00128 Dkt. 25), and Plaintiff's Sur-Reply and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 26-27).  Each of those filings is incorporated by reference into this Complaint.

19.     After a consideration of the respective pleadings, Magistrate Judge Payne recommended denial of KTree's motion, without prejudice, holding that "the claims appear to address a problem particular to the internet: dynamically generating websites and displaying web pages based on stored user-selected settings" and further stating "the asserted claims do not bear all of the hallmarks of claims that have been invalidated on the pleadings by other courts in the past.  For example, the claims are not merely do-it-on-a-computer claims." (Dkt. 29, attached as Exhibit F.)  No objection was filed to the Magistrate Judge's report and recommendation and the decision therefore became final.

20.     In Case No. 3:18-CV-04688-RS, a case filed in the Northern District of California, the defendant in that action, Pantheon Systems, Inc. brought a Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint asserting that the '397 patent and U.S.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

Patent No. 7,594,168 (asserted in Count II below) were directed to the abstract idea of creating and displaying webpages based upon information from a user with no further inventive concept and purportedly ineligible for patenting under 35 U.S.C. § 101 ("§ 101").  (Case No. 3:18-CV-04688-RS Dkt.26) Subsequent briefing included Plaintiff's Answering Brief in Opposition of Defendant's Motion to Dismiss (Case No. 3:18-CV-04688-RS Dkt.32), and Reply in Support of Defendant's Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint (Case No. 3:18-CV-04688-RS Dkt.34). Each of those filings is incorporated by reference into this Complaint.

21.    After a motion hearing and a consideration of the respective pleadings, Hon. Richard Seeborg denied both motions holding that "it simply cannot be said on the present record that the claims are drawn so broadly as to be divorced from the potentially patent-eligible purported technological improvements described in the specification" and further stating "The patents here are directed at a purportedly revolutionary technological solution to a technological problem—how to create webpages for the internet in a manner that permits "what you see is what you get" editing, and "a number of other alleged improvements over the then-existing methodologies." (Case No. 3:18-CV-04679-RS Dkt.45; Case No. 3:18-CV-04688-RS Dkt.40; attached as Exhibit G.)

22.    Plaintiff is the lawful owner of all rights, title, and interest in United States Patent No. 7,594,168 entitled "Browser Based Web Site Generation Tool and Run Time Engine," including the right to sue and to recover for infringement thereof.  The '168 patent was duly and legally issued on September 22, 2009, naming Steven H. Rempell as the inventor.  A true and correct copy of the '168 patent is attached as Exhibit B.

23.    The inventions of the '168 patent solve technical problems related to website creation and generation.  For example, the inventions enable the creation of websites through browser-based build tools and a user interface. These features are exclusively implemented utilizing computer technology.

24.    The claims of the '168 patent do not merely recite the performance of some pre-Internet business practice on the Internet.  Instead, the claims of the '168 patent recite inventive

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

concepts that are rooted in computerized website creation technology, and overcome problems specifically arising in the realm of computerized website creation technologies.

25.     The claims of the '168 patent recite inventions that are not merely the routine or conventional use of website creation systems and methods.  Instead, the inventions teach a browser-based website creation system including a server comprising a build engine configured to create and apply styles to, for example, a website with web pages comprised of objects.

26.     The technology claimed in the '168 patent does not preempt all ways of using website or web page authoring tools nor any other well-known or prior art technology.

27.     Accordingly, each claim of the '168 patent recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

28.     In Case No. 3:18-CV-04679-RS, a case filed in the Northern District of California, the defendant in that action, Code and Theory LLC. brought a Motion to Dismiss Plaintiff's Complaint asserting that the '397 patent and U.S. Patent No. 7,594,168 (asserted in Count II below) are not subject matter eligible under 35 U.S.C. § 101 as a matter of law.  (Case No. 3:18-CV-04679-RS Dkt.35). Subsequent briefing included Plaintiff Express Mobile, Inc.'s Opposition to Defendant Code and Theory LLC's Motion to Dismiss Plaintiff's Complaint (Case No. 3:18-CV-04679-RS Dkt.40), and Motion to Dismiss Plaintiff's Complaint [sic] (Case No. 3:18-CV-04679-RS Dkt.41). Each of those filings is incorporated by reference into this Complaint.

29.     In C.A. 2:17-00128, a case filed in the Eastern District of Texas, the defendant in that action, KTree Computer Solutions brought a Motion for Judgment on the Pleadings asserting that the '397 patent and U.S. Patent No. 7,594,168 (asserted in Count II below) were invalid as claiming abstract subject matter under 35 U.S.C. § 101.  (C.A. 2:17-00128 Dkt. 9.)  Subsequent briefing included Plaintiff's Response and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 17, 22-24), KTree's Reply (C.A. 2:17-00128 Dkt. 25), and Plaintiff's Sur-Reply and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 26-27).  Each of those filings is incorporated by reference into this Complaint.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

30.     After a consideration of the respective pleadings, Magistrate Judge Payne recommended denial of KTree's motion, without prejudice, holding that "the claims appear to address a problem particular to the internet: dynamically generating websites and displaying web pages based on stored user-selected settings" and further stating "the asserted claims do not bear all of the hallmarks of claims that have been invalidated on the pleadings by other courts in the past.  For example, the claims are not merely do-it-on-a-computer claims." (Dkt. 29, attached as Exhibit F.)  No objection was filed to the Magistrate Judge's report and recommendation and the decision therefore became final.

31.     In Case No. 3:18-CV-04688-RS, a case filed in the Northern District of California, the defendant in that action, Pantheon Systems, Inc. brought a Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint asserting that the '397 patent and U.S. Patent No. 7,594,168 (asserted in Count II below) were directed to the abstract idea of creating and displaying webpages based upon information from a user with no further inventive concept and purportedly ineligible for patenting under 35 U.S.C. § 101 ("§ 101").  (Case No. 3:18-CV-04688-RS Dkt.26) Subsequent briefing included Plaintiff's Answering Brief in Opposition of Defendant's Motion to Dismiss (Case No. 3:18-CV-04688-RS Dkt.32), and Reply in Support of Defendant's Motion to Dismiss Counts I and II of Plaintiff's First Amended Complaint (Case No. 3:18-CV-04688-RS Dkt.34). Each of those filings is incorporated by reference into this Complaint.

32.     After a motion hearing and a consideration of the respective pleadings, Hon. Richard Seeborg denied both motions holding that "it simply cannot be said on the present record that the claims are drawn so broadly as to be divorced from the potentially patent-eligible purported technological improvements described in the specification" and further stating "The patents here are directed at a purportedly revolutionary technological solution to a technological problem—how to create webpages for the internet in a manner that permits "what you see is what you get" editing, and "a number of other alleged improvements over the then-existing methodologies." (Case No. 3:18-CV-04679-RS Dkt.45; Case No. 3:18-CV-04688-RS Dkt.40; attached as Exhibit G.)

33. Plaintiff is the lawful owner of all rights, title, and interest in United States Patent No. 9,063,755 entitled "Systems and methods for presenting information on mobile devices," including the right to sue and to recover for infringement thereof. The '755 patent was duly and legally issued on June 23, 2015, naming Steven H. Rempell, David Chrobak and Ken Brown as the inventors. A true and correct copy of the '755 patent is attached as Exhibit C.

34. The inventions of the '755 patent solve technical problems related to a system for generating code to provide content, for example dynamic content, on a display of a device. For example, the inventions of the '755 patent produce and deliver code in the form of players and applications to devices. The players and applications then display information received from a web service. These features are exclusively implemented utilizing computer technology.

35. The claims of the '755 patent do not merely recite the performance of some pre-Internet business practice on the Internet. Instead, the claims of the '755 patent recite inventive concepts that are rooted in the computerized generation of content on a display of a device, such as a mobile device, and overcome problems specifically arising in the realm of computerized content generation and display technologies.

36. The claims of the '755 patent recite inventions that are not merely the routine or conventional use of systems and methods for the computerized generation of content on a display of a device. Instead, the inventions feature systems for use with devices and methods of using the systems with authoring tools to produce Players specific to each device and Applications that are device independent.

37. The technology claimed in the '755 patent does not preempt all ways for the computerized generation of code for a display of a device nor any other well-known or prior art technology.

38. Accordingly, each claim of the '755 patent recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

39. Plaintiff is the lawful owner of all rights, title, and interest in United States Patent No. 9,471,287 entitled "Systems and Methods for Integrating Widgets on Mobile Devices,"

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

including the right to sue and to recover for infringement thereof.  The '287 patent was duly and legally issued on October 18, 2016, naming Steven H. Rempell, David Chrobak and Ken Brown as the inventors. A true and correct copy of the '287 patent is attached as Exhibit D.

40.     The inventions of the '287 patent solve technical problems related to generating content, for example dynamic content, on a display of a device.  For example, the inventions of the '287 patent define a User Interface ("UI") object, either selected by a user or selected automatically, for display on the device.  The inventions of the '287 patent also produce and deliver code in the form of players and applications to devices. The players and applications then display information received from a web service. These features are exclusively implemented utilizing computer technology.

41.     The claims of the '287 patent do not merely recite the performance of some pre-Internet business practice on the Internet.  Instead, the claims of the '287 patent recite inventive concepts that are rooted in the computerized generation of content on a display of a device, such as a mobile device, and overcome problems specifically arising in the realm of computerized display content generation technologies.

42.     The claims of the '287 patent recite inventions that are not merely the routine or conventional use of systems and methods for the computerized generation of content on a display of a device.  Instead, the inventions feature systems for use with devices and methods of using the systems with authoring tools to produce Players specific to each device and Applications that are device independent.

43.     The technology claimed in the '287 patent does not preempt all ways for the computerized generation of content on a display of a device nor any other well-known or prior art technology.

44.     Accordingly, each claim of the '287 patent recites a combination of elements sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible concept.

45.     Plaintiff is the lawful owner of all rights, title, and interest in United States Patent No. 9,928,044 entitled "Systems and Methods for Programming Mobile Devices," including the

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1    right to sue and to recover for infringement thereof.  The '044 patent was duly and legally issued

2    on March 27, 2018, naming Steven H. Rempell, David Chrobak and Ken Brown as the inventors.

3    A true and correct copy of the '044 patent is attached as Exhibit E.

4            46.      The inventions of the '044 patent solve technical problems related to generating

5    and distributing programming to mobile devices over a network.  For example, the inventions of

6    the '044 patent define a User Interface ("UI") object, either selected by a user or selected

7    automatically, for display on the device.  The inventions of the '044 patent also produce and

8    deliver code in the form of players and applications which include web page views.  The players

9    and applications then display information received from a web service.  These features are

10   exclusively implemented utilizing computer technology.

11          47.      The claims of the '044 patent do not merely recite the performance of some pre-

12   Internet business practice on the Internet.  Instead, the claims of the '044 patent recite inventive

13   concepts that are rooted in the computerized generation of content on a display of a device, such

14   as a mobile device, and overcome problems specifically arising in the realm of computerized

15   display content generation technologies.

16          48.      The claims of the '044 patent recite inventions that are not merely the routine or

17   conventional use of systems and methods for the computerized generation of content on a display

18   of a device.  Instead, the inventions feature systems for use with devices and methods of using

19   the systems with authoring tools to generate and distribute application and player code that

20   generate displays on a device, such as a mobile device, utilizing information stored in databases

21   and retrieved from web services.

22          49.      The technology claimed in the '044 patent does not preempt all ways for the

23   computerized generation and distribution of programming to a device nor any other well-known

24   or prior art technology.

25          50.      Accordingly, each claim of the '044 patent recites a combination of elements

26   sufficient to ensure that the claim amounts to significantly more than a patent on an ineligible

27   concept.

28

**STEPTOE & JOHNSON LLP**
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

**BACKGROUND**

51.    Plaintiff Express Mobile is a leader in the business of developing mobile app and web site design and creation platforms, and has intellectual property including U.S. patents relating to certain tools useful in the field.  Express Mobile is managed by individuals with many years of technology and business experience.  The CEO of Express Mobile, Steve Rempell, is the inventor of Express Mobile's patent portfolio.  Mr. Rempell has over 50 years' experience in technology companies, with much of that work focused on web-based technologies and applications.

52.    Defendant Adobe is a well-known company that provides website building, hosting, and marketing services to businesses as well as individuals.  Adobe has grown rapidly and now generates billions of dollars of revenue per year.

53.    Using the technology claimed by the Patents-In-Suit, Adobe's Spark, Spark Page, Illustrator, Portfolio, Photoshop, Dreamweaver, XD, and other website builder tools (the "Adobe Accused Instrumentalities") build, host, and market websites for Adobe's customers by letting the customers select settings representing website elements, storing these settings in a database, and retrieving stored information to generate websites. The Accused Instrumentalities also generate code in the form of players and applications that can interact with web services to provide content for display on users' devices.

54.    Magento is a for-profit organization with revenues of approximately one hundred twenty million U.S.D. per year.  Moreover, Magento, its employees and/or agents utilize the Accused Instrumentalities in the building of websites for Magento's customers, leading to direct or indirect revenues and profit.  As one example of indirect profit, entities such as Magento will frequently offer website building services at reduced pricing as an inducement to attract customers, who then purchase additional products or services.  On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Magento would be at a disadvantage in the marketplace and would generate less revenue overall.

55.    Using the technology claimed by the Patents-In-Suit, all versions of Magento Commerce and Magento's website builder tools, including Magento Page Builder (the "Magento

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

Accused Instrumentalities") build, host, and market websites for Magento's customers by letting the customers select settings representing website elements, storing these settings in a database, and retrieving stored information to generate websites.  The Magento Accused Instrumentalities also generate code in the form of players and applications that can interact with web services to provide content for display on users' devices.

**COUNT I – ADOBE'S INFRINGEMENT OF U.S. PATENT NO. 6,546,397**

56.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 55 above.

57.    Defendant Adobe has manufactured, used, offered for sale, or sold browser-based website building tools that infringed, either literally or under the doctrine of equivalents, one or more claims of the '397 patent in violation of 35 U.S.C. § 271(a).

58.    On information and belief, Adobe directly infringed at least claim 1 of the '397 patent through the Adobe Accused Instrumentalities that, during relevant time periods, provided browser-based website authoring tools in which the user-selected settings representing website elements were stored in a database, and in which said stored information was retrieved to generate said website.

59.    For example, during relevant time periods, Adobe's Spark Product infringed at least claim 1 of the '397 patent by presenting a viewable menu having a user selectable panel of settings (e.g., font) describing elements on a web site, said panel of settings being presented through a browser on a computer adapted to accept one or more of said selectable settings in said panel as inputs therefrom, and where at least one of said user selectable settings in said panel corresponded to commands to said virtual machine.



60.     The user selectable settings corresponded to commands to the virtual machine. For example, in the viewable menu above, one of the user selected settings is the font style—H1 or H2—of the tagline "Webpage Test."  That setting corresponds to the commands to a virtual machine (e.g., "style") to display the text in the selected style "H1" (represented in the code below by transform:translate3d(0px, 551px, 0px)) or some other style.  On information and belief, each Accused Instrumentality had, during relevant time periods, the same or like functionality.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

61.     The Accused Instrumentalities generated a display (e.g., preview) in accordance with one or more user selected settings substantially contemporaneously with the selection thereof. For example, as shown below when the font style is changed from "H1" to "H2" in the panel of settings, Adobe Spark's Website Builder generates the display substantially contemporaneously with the selection to reflect a different font style for the same "Webpage Test" text.  On information and belief, each Accused Instrumentality had, during relevant time periods, the same or like functionality.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105



62.    On information and belief, the Accused Instrumentalities used a database to store information representative of the user selected settings. For example, the presence of a database (or databases) in Adobe's Website Builder is evidenced by, among other things, the saving of the user selectable settings formatted in JavaScript Object Notation (JSON) to the backend server. Shortly after a user selects a new text style for the tagline "Webpage Test" Adobe's Spark Website Builder processes and saves the settings formatted in JSON. JSON is a data format frequently used to store and query databases. *See, e.g.*, https://www.infoworld.com/article/3222851/what-is-json-javascript-object-notation-explained.html. Other user selected settings stored included theme, cover image, accent, alignment, font, logo, among others.  On information and belief, each Accused Instrumentality had, during relevant times periods, the same or like functionality.

63.    The Accused Instrumentalities generated a website by retrieving information representative of user selected settings stored in Adobe's database.  For example, Adobe's Spark Website Builder generates the website below including the two distinct font header styles for the "My Webpage" and "Add a Subtitle" taglines by retrieving the user selected font size setting

from a database.  On information and belief, each Accused Instrumentality had, during relevant time periods, the same or like functionality.



64.     The Accused Instrumentalities built one or more web pages of the website from the information in the database and at least one run time file.  For example, Adobe's Spark Website Builder builds the web page shown above using information from the database (e.g., tagline, font style) and a number of run time files, including HTML, JavaScript, and other code files. On information and belief, each Accused Instrumentality had, during relevant time periods, the same or like functionality.

65.     At run time, the at least one run time file utilized information stored in the database to generate the HTML, CSS, and JavaScript code for one or more displayed web pages. The HTML, CSS, JavaScript code represented virtual machine commands that are interpreted and executed by the applicable browser engine, which comprised an abstract machine that is not built in hardware but is emulated in software, to render the web page display. In the exemplary screenshot below, at least one run time file in Adobe Spark's Website Builder generates HTML, CSS, and JavaScript code corresponding to the displayed web page shown above.  On information and belief, each Accused Instrumentality had, during relevant time periods, the same or like functionality.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

66.     The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Adobe Spark, Adobe Portfolio, and sample websites created using those and other Adobe platforms or Adobe Accused Products. *See, e.g.*, https://spark.adobe.com/make/website-builder/, https://spark.adobe.com/sp/design/post/new?_branch_match_id=726534844216471899, https://spark.adobe.com/page/Xg9Pl/, https://spark.adobe.com/page/ze6uWjcxUxIaF/, https://blogging.com/website-builders/adobe-spark/, https://www.digitaltrends.com/web/how-to-use-adobe-spark-page/; https://portfolio.adobe.com/; https://portfolio.adobe.com/examples; https://portfolio.adobe.com/resources.

67.     On information and belief, Adobe was made aware of the '397 patent and its infringement thereof at least as early as June 19, 2018 when it acquired Magento by virtue of Express Mobile placing Magento on notice of the '397 and '168 patents on February 28, 2013. Adobe has also been aware of the '397 and '168 patents at least as of June 19, 2018 when it acquired Magento by virtue of Magento's ongoing litigation with Express Mobile pertaining to the '397 and '168 patents, which commenced in May 2017.  And Adobe was also made aware of the '397 and '168 patents by virtue of another letter from Express Mobile's counsel dated

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

February 6, 2020.   Furthermore, Adobe has been aware of the '397 patent and its infringement thereof since at least the filing of this complaint.

68.   Upon information and belief, since at least the time Adobe received notice, Adobe induced others to infringe at least one claim of the '397 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Adobe's partners, clients, customers, and end users, whose use of the Adobe Accused Instrumentalities constituted direct infringement of at least one claim of the '397 patent.

69.   In particular, Adobe's actions that aided and abetted others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Adobe Accused Instrumentalities and providing instruction materials, training, and services regarding the Adobe Accused Instrumentalities.  Adobe actively encouraged the adoption of the Adobe Accused Instrumentalities and provided support sites for the vast network of developers working with the Adobe Accused Instrumentalities, emphasizing the user-friendly nature of their website builder and explaining that using Adobe Spark "you could create a professional-looking web page in minutes – no designer, no code, and no hosting required," and that with Adobe Portfolio you can "showcase your work in minutes" with "our easy-to-customize themes" which are "the most beautiful way to present your work online."  (*See, e.g.,* https://spark.adobe.com/make/website-builder/; https://portfolio.adobe.com/).  On information and belief, Adobe engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Adobe had actual knowledge of the '397 patent and knowledge that their acts were inducing infringement of the '397 patent since at least the date Adobe received notice that such activities infringed the '397 patent.

70.   Upon information and belief, since at least the time Adobe received notice, Adobe is liable as a contributory infringer of the '397 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '397 patent.  The Adobe Accused

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

Instrumentalities were a material component for use in practicing the '397 patent and are specifically made and not a staple article of commerce suitable for substantial non-infringing use.

71.     Upon information and belief, since at least the time Adobe received notice, Adobe's infringement of the '397 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct amounted to infringement of the patent.  Adobe's infringing activities constitute egregious infringement behavior beyond typical infringement.

72.     Express Mobile has complied with 35 U.S.C. § 287 with respect to the '397 patent.

73.     Express Mobile has been harmed by Adobe's infringing activities.

74.     Adobe's infringement has damaged and injured Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Adobe is enjoined by this Court from further infringement.

### COUNT II – ADOBE'S INFRINGEMENT OF U.S. PATENT NO. 7,594,168

75.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 74 above.

76.     Defendant Adobe has manufactured, used, offered for sale, or sold browser-based website building tools that infringe, either literally or under the doctrine of equivalents, one or more claims of the '168 patent in violation of 35 U.S.C. § 271(a).  Defendant's infringement will continue unless enjoined by this Court.

77.     On information and belief, Adobe has and continues to directly infringe at least claim 1 of the '168 patent through its Adobe Accused Instrumentalities that provide browser-based website authoring tools in which the user-selected settings representing website elements are stored in a database, and in which said stored information is retrieved to assemble said website.

78.     For example, Adobe infringes at least claim 1 of the '168 patent by providing a system for assembling a web site comprising a server comprising a build engine configured to

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

practice each limitation of claim 1 through a combination of features. As shown in the exemplary screenshot below, the Accused Instrumentalities comprise the Adobe Portfolio Website Builder's editor as part of a system for assembling a web site hosted on Adobe's server.



79.    The Adobe Accused Instrumentalities are configured to accept user input to create a website comprising a plurality of web pages, where each web page comprises a plurality of objects, such as a Page Background, Text Boxes, Images, and Input Fields.  For example, as shown in the screenshot below, the Adobe Portfolio Website Builder's editor is configured to accept user input (e.g., selection of text alignment) for text boxes displayed on the website (e.g., in the "Page Header" field shown below).

80.    The Adobe Accused Instrumentalities' build engine is configured to accept user input to associate a style with objects of the plurality of web pages.  As shown in the screenshots

1    below, by using Adobe Portfolio's Website Builder's editor, a user can input fields to associate a

2    style with an object or series of objects. Additionally, the at least one button object or at least one

3    image object is associated with a style that includes values defining transformations and time

4    lines for the at least one button object or at least one image object.  Buttons and images created

5    using Adobe Portfolio's Website Builder have associated styles, such as Width, Alignment, and

6    Margins, and "Normal" as opposed to "Hover" styles.  The buttons and images that can be

7    inserted into a webpage further include transformations and time lines definitions that affect the

8    appearance and behavior of the buttons or images as a sequence of changes.  For example,

9    buttons can be associated with different colors in a "Normal" state that is transformed when the

10   mouse "Hovers" over the button, as shown with the screenshots of the "Test Button" shown

11   below.  By selecting a combination of options within the Adobe Portfolio Website Builder, a

12   user can associate transformations and time lines of buttons or images.



STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

81.     Each Adobe Accused Instrumentalities' web page is defined entirely by each of the plurality of objects (e.g., sections, images, text, and buttons) comprising that web page and the style (e.g., Accent, color, font-size) associated with the object.

82.     The Adobe Accused Instrumentalities are configured to produce a database with a multidimensional array comprising the objects that comprise the web site including data defining, for each object, the object style, an object number, and an indication of the web page that each object is part of.  For example, Adobe Portfolio's Website Builder saves information about each user's website, including information representative of the user selected settings in a database.  Adobe's databases include multi-dimensional arrays containing the information and settings describing each user's Adobe website identifiable by indices.  Adobe further stores the Header, Footer, sections, and associated settings of each user's website's web pages.  Adobe Portfolio Website Builder's ability to later retrieve the object data to generate web pages that correctly associate the objects with the web page they are in and using the user-selected settings reflects that Adobe's databases include data records defining these objects and associated settings, database record identifiers, and data associating these objects with their corresponding web pages.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

83.     On information and belief, the Accused Instrumentalities use a database to store objects and style data.  For example, the presence of a database (or databases) in Adobe Portfolio's Website Builder is evidenced by, among other things, the saving of the user selectable settings formatted in JavaScript Object Notation (JSON) to the backend server. As seen below, shortly after a user changes the font for the webpage from "Bebas Kai" to "Proxima Nova," the "Test Website" and "Test 1" text font changes accordingly, and the Adobe Portfolio Website Builder processes and saves the settings formatted in JSON. JSON is a data format frequently used to store and query databases. *See, e.g.*, https://www.infoworld.com/article/3222851/what-is-

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1   json-javascript-object-notation-explained.html.  Other user selected settings stored include

2   theme, cover image, accent, alignment, font, logo, among others.

3          84.     The Adobe Accused Instrumentalities are configured to provide the database to a

4   server accessible to web browser. For example, Adobe' Portfolio Website Builder provides the

5   database for its users' websites to a server accessible over the Internet by web browsers.

6   Adobe's servers host websites for its users over the Internet that include the web pages created

7   using the Adobe Accused Instrumentalities.  These websites are accessible to website visitors

8   through a web browser.

9

10  

11

12

13

14

15

16

17

18

19

20         85.     The Adobe Accused Instrumentalities are configured to provide the database

21  wherein the database is produced such that a web browser with access to a runtime engine is

22  configured to generate the web-site from the objects and style data extracted from the provided

23  database. Adobe's servers use the database of object and style data to send files to website

24  visitors that allow the visitor's web browser to generate the website from the data in the

25  database.  The visitor's web browser has access to runtime engine files that facilitate retrieval of

26  the objects and style data from Adobe's databases.

27

28

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.

86.     The Accused Instrumentalities generate a website by retrieving information representative of user selected settings stored in Adobe's database.  For example, the Adobe Portfolio Website Builder generates the website below, including the "Test Website" logo and "Test 1" header, by accepting user inputs and retrieving the user selected font based on a user selected theme ("Ludwig") that is retrieved from a database.





STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                               CASE NO.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

87.     The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Adobe Spark, Adobe Portfolio, and sample websites created using those and other Adobe platforms or Adobe Accused Products. *See, e.g.*, https://spark.adobe.com/make/website-builder/, https://spark.adobe.com/sp/design/post/new?_branch_match_id=726534844216471899, https://spark.adobe.com/page/Xg9Pl/, https://spark.adobe.com/page/ze6uWjcxUxIaF/, https://blogging.com/website-builders/adobe-spark/, https://www.digitaltrends.com/web/how-to-use-adobe-spark-page/; https://portfolio.adobe.com/; https://portfolio.adobe.com/examples; https://portfolio.adobe.com/resources.

88.     On information and belief, Adobe was made aware of the '168 patent and its infringement thereof at least as early as June 19, 2018 when it acquired Magento by virtue of Express Mobile placing Magento on notice of the '397 and '168 patents on February 28, 2013. Adobe has also been aware of the '397 and '168 patents at least as early as June 19, 2018 when it acquired Magento by virtue of Magento's ongoing litigation with Express Mobile pertaining to the '397 and '168 patents, which commenced in May 2017.  And Adobe was also made aware of the '397 and '168 patents by virtue of another letter from Express Mobile's counsel dated February 6, 2020.  Furthermore, Adobe has been aware of the '168 patent and its infringement thereof since at least the filing of this complaint.

89.     Upon information and belief, since at least the time Adobe received notice, Adobe has induced and continues to induce others to infringe at least one claim of the '168 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Adobe's partners, clients, customers, and end users, whose use of the Adobe Accused Instrumentalities constitutes direct infringement of at least one claim of the '168 patent.

90.     In particular, Adobe's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Adobe Accused Instrumentalities and providing instruction materials, training, and services regarding

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

the Accused Instrumentalities.  Adobe actively encourages the adoption of the Adobe Accused Instrumentalities and provides support sites for the vast network of developers working with the Adobe Accused Instrumentalities, emphasizing the user-friendly nature of their website builder and explaining that using Adobe Spark "you could create a professional-looking web page in minutes – no designer, no code, and no hosting required," and that with Adobe Portfolio you can "showcase your work in minutes" with "our easy-to-customize themes" which are "the most beautiful way to present your work online."  (*See, e.g.,* https://spark.adobe.com/make/website-builder/; https://portfolio.adobe.com/).  On information and belief, Adobe has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Adobe has had actual knowledge of the '168 patent and knowledge that their acts were inducing infringement of the '168 patent since at least the date Adobe received notice that such activities infringed the '168 patent.

91.   Upon information and belief, since at least the time Adobe received notice, Adobe is liable as a contributory infringer of the '168 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '168 patent.  The Adobe Accused Instrumentalities are a material component for use in practicing the '168 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

92.   Upon information and belief, since at least the time Adobe received notice, Adobe's infringement of the '168 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct amounted to infringement of the patent.  Adobe's infringing activities constitute egregious infringement behavior beyond typical infringement.

93.   Express Mobile has complied with 35 U.S.C. § 287 with respect to the '168 patent.

94.   Express Mobile has been harmed by Adobe's infringing activities.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

95.     Adobe's infringement has damaged and continues to damage and injure Plaintiff. Plaintiff's injury is irreparable and will continue unless and until Defendant is enjoined by this Court from further infringement.

**COUNT III – ADOBE'S INFRINGEMENT OF U.S. PATENT NO. 9,063,755**

96.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 95 above.

97.     Adobe has manufactured, used, offered for sale, or sold programming generation and distribution tools that infringe, either literally or under the doctrine of equivalents, one or more claims of the '755 patent in violation of 35 U.S.C. § 271(a).  Adobe's infringement will continue unless enjoined by this Court.

98.     On information and belief, Adobe has and continues to directly infringe at least claim 12 of the '755 patent by practicing each claim limitation for displaying content on a display of a device utilizing a registry of one or more web components related to inputs and outputs of a web service.

99.     For example, Adobe Spark's Website Builder stores a registry of symbolic names required to evoke a web component (e.g., video, etc.) and address of a web service (e.g., YouTube video, etc.).

100.     The Adobe Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Adobe Website Builders integrate with third-party web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrate with payment providers like PayPal, and integrate with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add YouTube Video images to their website provided from a YouTube web service, as shown above with "The Joy of Books" YouTube video.

101.     Adobe's Website Builder also stores an address of the web service. For example, the exemplary screenshot below shows that Adobe stores the web address of the YouTube web service for retrieving video content.  When the embedded YouTube video is clicked by the user, a request is made to a web address located at https://www.youtube.com/.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

102.    The Adobe Accused Instrumentalities allow Adobe users to define UI objects on their website.  For example, Adobe users select, using the Website Builder editor, content to be placed on their websites, such as text, input fields, buttons, images, and divs.  The UI objects correspond to the web components included in the computer memory described above.  For example, Adobe's Website Builder editor allows users to define content on their website for videos.  These UI objects correspond to the video web components.  These web components include both inputs from and outputs to corresponding web services.

103.    The Adobe Accused Instrumentalities select the symbolic names described above. For example, Adobe Spark's Website Builder is configured to generate a YouTube video object upon a user's request. The selected symbolic name for the YouTube video web component is associated with the UI object.

104.    The Adobe Accused Instrumentalities produce an application including the selected symbolic name of the defined UI object, where the application is a device-independent code. For example, the YouTube video object that can be incorporated into a website is built from at least a portion of the information in Adobe's databases.  The settings selected by the user that are stored in Adobe's databases are used to build the user's web pages reflecting those settings.

COMPLAINT FOR PATENT INFRINGEMENT                           CASE NO.

105.   The Adobe Accused Instrumentalities produce a player, where the player is a device-dependent code. In order for a site to display on different devices through a browser or through responsive capabilities, there is device dependent code. *See, e.g., X Commerce, Inc. v Express Mobile, Inc*., Case No 17-cv-02605-RS, NDCA, DKT 79-5.

106.   The Adobe Accused Instrumentalities provide the application and player to the device and when the application and player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object, the device provides the user provided one or more input values and corresponding input symbolic name to the web service.  Adobe makes its customers' websites accessible to website visitors' devices.  The website visitors connect to the website on their own devices which are supplied the application and player code described above.  The website visitors are then able to provide input values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The websites provided by Adobe are designed such that when a website visitor provides input as described above, this input is provided to the web service.  For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

107.   The web service utilizes the input symbolic name and the user-provided one or more input values for generating one or more output values having an associated output symbolic name.  Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser.  For example, when a website visitor clicks on the YouTube video for "The Joy of Books," the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

108.   The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

the defined UI object.  The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service.  The player then presents the received output values for display in the UI object.  For example, an output of the YouTube web service includes the actual played video which is then presented within the visitor's browser.

109.    The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Adobe Spark, Adobe Portfolio, and sample websites created using those and other Adobe platforms or Adobe Accused Products. *See, e.g.*, https://spark.adobe.com/make/website-builder/, https://spark.adobe.com/sp/design/post/new?_branch_match_id=726534844216471899, https://spark.adobe.com/page/Xg9Pl/, https://spark.adobe.com/page/ze6uWjcxUxIaF/, https://blogging.com/website-builders/adobe-spark/, https://www.digitaltrends.com/web/how-to-use-adobe-spark-page/; https://portfolio.adobe.com/; https://portfolio.adobe.com/examples; https://portfolio.adobe.com/resources.

110.    On information and belief, Accused Instrumentalities are used, marketed, provided to, and/or used by or for Adobe's partners, clients, customers and end users across the country and in this district.

111.    On information and belief, Adobe was made aware of the '755 patent and its infringement thereof at least as early as of June 19, 2018 when it acquired Magento by virtue of prior litigation between Express Mobile and Magento Solution Partners pertaining to the '755 patent, including the first patent infringement suit against Magento Solution Partners filed on July 15, 2016.  *See e.g., Express Mobile, Inc. v. Jiva Infotech, Inc. d/b/a I95DEV*, 2-16-cv-00775, Dkt. no. 1 (E.D. Tex.) (Complaint dated July 15, 2016).  In addition, on information and belief, Adobe was made aware of the '755 patent and its infringement thereof at least as early as of June 19, 2018 when it acquired Magento by virtue of prior litigation between Express Mobile and Magento, including the patent infringement suit starting at least as early as May 15, 2017, when Magento sued Express Mobile.  *See X Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In addition, on

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

information and belief, Adobe was made aware of the '755 patent and its infringement thereof at least as early as April 5, 2019 by virtue of Express Mobile providing Magento (who had been acquired by Adobe as of that date) access to agreements relating to the '755 patent during the course of the lawsuit between Express Mobile and Magento.  In addition, Adobe was made aware of the '755 patent and its infringement thereof on February 6, 2020 when Express Mobile provided notice of Adobe's infringement of the '755 patent by letter.  Furthermore, Adobe has been aware of the '755 patent and its infringement thereof since at least the filing of this complaint.

112.    Upon information and belief, since at least the time Adobe received notice, Adobe has induced and continue to induce others to infringe at least one claim of the '755 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Adobe's partners, clients, customers, and end users, whose use of the Adobe Accused Instrumentalities constitutes direct infringement of at least one claim of the '755 patent.

113.    In particular, Adobe's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Adobe Accused Instrumentalities and providing instruction materials, training, and services regarding the Adobe Accused Instrumentalities.  Adobe actively encourages the adoption of the Adobe Accused Instrumentalities and provides support sites for the vast network of developers working with the Adobe Accused Instrumentalities.  On information and belief, Adobe has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Adobe has had actual knowledge of the '755 patent and knowledge that their acts were inducing infringement of the '755 patent since at least the date Adobe received notice that such activities infringed the '755 patent.

114.    Upon information and belief, since at least the time Adobe received notice, Adobe is liable as a contributory infringer of the '755 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '755 patent.  The Adobe Accused

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1    Instrumentalities are a material component for use in practicing the '755 patent and are

2    specifically made and are not a staple article of commerce suitable for substantial non-infringing

3    use.

4         115.    Upon information and belief, since at least the time Adobe received notice,

5    Adobe's infringement of the '755 patent has been willful because it knew about the patent-in-

6    suit, engaged in infringing activities with specific intent to infringe or willful blindness to its

7    infringement, continues to infringe the patent, and knew or should have known that its conduct

8    amounted to infringement of the patent.  Adobe's infringing activities constitute egregious

9    infringement behavior beyond typical infringement.

10        116.    Express Mobile has complied with 35 U.S.C. § 287 with respect to the '755

11   patent.

12        117.    Express Mobile has been harmed by Adobe's infringing activities.

13        118.    Adobe's infringement has damaged and continues to damage and injure Plaintiff.

14   Plaintiff's injury is irreparable and will continue unless and until Adobe is enjoined by this Court

15   from further infringement.

16   **COUNT IV – ADOBE'S INFRINGEMENT OF U.S. PATENT NO. 9,471,287**

17        119.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to

18   118 above.

19        120.    Adobe has manufactured, used, offered for sale, or sold programming generation

20   and distribution tools that infringe, either literally or under the doctrine of equivalents, one or

21   more claims of the '287 patent in violation of 35 U.S.C. § 271(a).  Adobe's infringement will

22   continue unless enjoined by this Court.

23        121.    On information and belief, Adobe has and continues to directly infringe at least

24   claim 15 of the '287 patent by practicing each claim limitation for displaying content on a

25   display of a device having a player.

26        122.    Upon information and belief, Adobe has and continues to directly infringe at least

27   claim 15 of the '287 patent by a system and method which includes a registry and an authoring

28   tool or Player configured to define a User Interface ("UI") object for display on the device,

---

COMPLAINT FOR PATENT INFRINGEMENT                                              CASE NO.

**STEPTOE & JOHNSON LLP**
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

where the UI object corresponds to a web component.  Each UI object is either: 1) selected by a user or 2) automatically selected by the system as a preferred UI object corresponding to a symbolic name of the web component and used to produce an Application, where the Application is a device-independent code and a Player, where the Player is a device-dependent code. The Application and Player enable 1) the device to provide one or more input values and corresponding input symbolic name to the web service and 2) the web service to utilize the input symbolic name and the user provided one or more input values to generate one or more output values having an associated output symbolic name, while 3) the Player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The Adobe Accused Instrumentalities include Adobe's website building tools that enable the functionality described above.

123.     Claim 15 of the '287 patent recites a method of displaying content on a display of a device having a Player, where the Player is a device-dependent code, the method comprising: defining a user interface (UI) object for presentation on the display, where the UI object corresponds to a web component included in a registry of one or more web components selected from a group consisting of an input of a web service and an output of the web service, where each web component includes a plurality of symbolic names of inputs and outputs associated with each web service, and where the registry includes: a) symbolic names required for evoking one or more web components each related to a set  of inputs and outputs of the web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, and b) an address of the web service, and where each defined UI object is either:1) selected by a user of an authoring tool; 2) automatically selected by a system as a preferred UI object corresponding to a symbolic name of the web component selected by the user of the authoring tool.

124.     The Adobe Accused Instrumentalities include a player, where the player is a device-dependent code. In order for a site to display on different devices through a browser or

through responsive capabilities, there is device dependent code. *See, e.g., X Commerce, Inc. v Express Mobile, Inc.*, Case No 17-cv-02605-RS, NDCA, DKT 79-5.

125.    The Adobe Accused Instrumentalities allow Adobe users to define UI objects on their website.  For example, Adobe users select, using the Website Builder editor, content to be placed on their websites, such as text, input fields, buttons, images, and divs.  The UI objects correspond to the web components included in the computer memory described above.  For example, Adobe's Spark Website Builder editor allows users to define content on their website for videos.  These UI objects correspond to the video web components.  These web components include both inputs from and outputs to corresponding web services.

126.    The Accused Instrumentalities store a registry of symbolic names required to evoke a web component (e.g., video, etc.) and address of a web service (e.g., YouTube video, etc.).



127.    The Adobe Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Adobe's Website Builder integrates with third-party

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrate with payment providers like PayPal, and integrate with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add YouTube Video images to their website provided from a YouTube web service, as shown above with "The Joy of Books" YouTube video.

128.    Adobe's Website Builder also stores an address of the web service. For example, the exemplary screenshot below shows that Adobe stores the web address of the YouTube web service for retrieving video content.  When the embedded YouTube video is clicked by the user, a request is made to a web address located at https://www.youtube.com/.



129.    Each defined UI object is automatically selected by the Accused Instrumentalities as the preferred UI object corresponding to the symbolic name of the web component selected by the user of the authoring tool.  For example, a "div" is automatically selected by the Adobe Accused Instrumentalities as the preferred UI object for the YouTube web component.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

130.    The Accused Instrumentalities select the symbolic names described above.  For example, Adobe's Website Builder is configured to generate a video section that includes a YouTube video upon a user's request.

131.    The Adobe Accused Instrumentalities associate the selected symbolic name with a defined UI object, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name. For example, the selected symbolic name for the map web component is only available to the UI object that supports the defined data associated with that symbolic name and is not available in the UI object for other sections of the web page.

132.    The Adobe Accused Instrumentalities produce an application including the selected symbolic name of the defined UI object, where the application is a device-independent code. For example, the video section is built from at least a portion of the information in Adobe's databases.  The settings selected by the user that are stored in Adobe's databases are used to build the user's web pages reflecting those settings.

133.    The Adobe Accused Instrumentalities provide the application and player to the device and when the application and player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object, the device provides the user provided

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

one or more input values and corresponding input symbolic name to the web service.  Adobe makes its customers' websites accessible to website visitors' devices.  The website visitors connect to the website on their own devices which are supplied the application and player code described above.  The website visitors are then able to provide input values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The websites provided by Adobe are designed such that when a website visitor provides input as described above, this input is provided to the web service.  For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

134.    The web service utilizes the input symbolic name and the user-provided one or more input values for generating one or more output values having an associated output symbolic name.  Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser.  For example, when a website visitor clicks on the YouTube video for "The Joy of Books," the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

135.    The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service.  The player then presents the received output values for display in the UI object.  For example, an output of the YouTube web service includes the played video that is then presented within the visitor's browser.

136.    The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Adobe Spark, Adobe Portfolio, and sample websites created using those and other Adobe platforms or Adobe Accused Products.

---

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

*See, e.g.*, https://spark.adobe.com/make/website-builder/,

https://spark.adobe.com/sp/design/post/new?_branch_match_id=726534844216471899,

https://spark.adobe.com/page/Xg9Pl/, https://spark.adobe.com/page/ze6uWjcxUxIaF/,

https://blogging.com/website-builders/adobe-spark/, https://www.digitaltrends.com/web/how-to-use-adobe-spark-page/; https://portfolio.adobe.com/; https://portfolio.adobe.com/examples;

https://portfolio.adobe.com/resources.

137.    On information and belief, Adobe was made aware of the '287 patent and its infringement thereof at least as early as June 19, 2018 when it acquired Magento by virtue of prior litigation between Express Mobile and Magento Solution Partners, including the first patent infringement suit against Magento Solution Partners filed on July 15, 2016 and the fact that the '287 patent had issued on October 18, 2016.  *See e.g., Express Mobile, Inc. v. Jiva Infotech, Inc. d/b/a I95DEV*, 2-16-cv-00775, Dkt. no. 1 (E.D. Tex.) (Complaint dated July 15, 2016).  In addition, on information and belief, Adobe was made aware of the '287 patent and its infringement thereof at least as early as of June 19, 2018 when it acquired Magento by virtue of prior litigation between Express Mobile and Magento, including the patent infringement suit starting at least as early as May 15, 2017, when Magento sued Express Mobile and the fact that the '287 patent had issued on October 18, 2016.  *See X Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In addition, on information and belief, Adobe was made aware of the '287 patent and its infringement thereof at least as early as April 5, 2019 by virtue of Express Mobile providing Magento (who had been acquired by Adobe as of that date) access to agreements relating to the '287 patent during the course of the lawsuit between Express Mobile and Magento.  In addition, on information and belief, Adobe was made aware of the '287 patent and its infringement thereof at least since February 6, 2020 when Express Mobile provided notice of Adobe's infringement of the'287 patent by letter.  Furthermore, Adobe has been aware of the '287 patent and its infringement thereof since at least the filing of this complaint.

138.    Upon information and belief, since at least the time Adobe received notice, Adobe has induced and continues to induce others to infringe at least one claim of the '287 patent under

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Adobe's partners, clients, customers, and end users, whose use of the Adobe Accused Instrumentalities constitutes direct infringement of at least one claim of the '287 patent.

139.   In particular, Adobe's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Adobe Accused Instrumentalities and providing instruction materials, training, and services regarding the Adobe Accused Instrumentalities.  Adobe actively encourages the adoption of the Adobe Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities.  On information and belief, Adobe has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Adobe has had actual knowledge of the '287 patent and knowledge that their acts were inducing infringement of the '287 patent since at least the date Adobe received notice that such activities infringed the '287 patent.

140.   Upon information and belief, since at least the time Adobe received notice, Adobe is liable as a contributory infringer of the '287 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '287 patent.  The Adobe Accused Instrumentalities are a material component for use in practicing the '287 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

141.   Upon information and belief, since at least the time Adobe received notice, Adobe's infringement of the '287 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct amounted to infringement of the patent.  Adobe's infringing activities constitute egregious infringement behavior beyond typical infringement.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

142.    Express Mobile has complied with 35 U.S.C. § 287 with respect to the '287 patent.

143.    Express Mobile has been harmed by Adobe's infringing activities.

144.    Defendant's infringement has damaged and continues to damage and injure Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Adobe is enjoined by this Court from further infringement.

### COUNT V – ADOBE'S INFRINGEMENT OF U.S. PATENT NO. 9,928,044

145.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 144 above.

146.    Upon information and belief, Adobe has and continues to directly infringe at least claim 15 of the '044 patent by a method which includes a computer memory and an authoring tool.  The computer memory stores symbolic names required for evoking a web component related to a web service and an address of the web service. The authoring tool is configured to define a User Interface ("UI") object for display on the device, where the UI object corresponds to a web component.  Each UI object is either: 1) selected by a user or 2) automatically selected by the system as a preferred UI object corresponding to a symbolic name of the web component. The information representative of the UI object and related settings are stored in a database. An application is built consisting web page views. The application and a player are provided to a device and enables the device to provide one or more input values and corresponding input symbolic name to the web service and the web service to utilize the input symbolic name and the user provided one or more input values to generate one or more output values having an associated output symbolic name, while the player receives the output symbolic name and corresponding one or more output values and provide instructions for the display of the device to present an output value in the defined UI object. (The "Accused Instrumentalities").  The Adobe Accused Instrumentalities include the Adobe Spark Website Builder that enables the functionality described above.

147.    Claim 15 of the '044 patent recites a method of displaying content on a display of a device having a Player, where the Player is a device-dependent code, the method comprising:

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1    defining a user interface (UI) object for presentation on the display, where the UI object

2    corresponds to a web component included in a registry of one or more web components selected

3    from a group consisting of an input of a web service and an output of the web service, where

4    each web component includes a plurality of symbolic names of inputs and outputs associated

5    with each web service, and where the registry includes: a) symbolic names required for evoking

6    one or more web components each related to a set  of inputs and outputs of the web service

7    obtainable over a network, where the symbolic names are character strings that do not contain

8    either a persistent address or pointer to an output value accessible to the web service, and b) an

9    address of the web service, and where each defined UI object is either:1) selected by a user of an

10   authoring tool; 2) automatically selected by a system as a preferred UI object corresponding to a

11   symbolic name of the web component selected by the user of the authoring tool.

12        148.    Defendant Adobe has manufactured, used, offered for sale, or sold programming

13   generation and distribution tools that infringe, either literally or under the doctrine of

14   equivalents, one or more claims of the '044 patent in violation of 35 U.S.C. § 271(a).  Adobe's

15   infringement will continue unless enjoined by this Court.

16        149.    On information and belief, Adobe has and continues to directly infringe at least

17   claim 15 of the '044 patent by practicing each claim limitation for displaying content on a

18   display of a device having a player and non-volatile memory storing symbolic names required

19   for evoking one or more web components each related to inputs and outputs of a web service.

20        150.    For example, Adobe's Website Builder stores a registry of symbolic names

21   required to evoke a web component (e.g., video, etc.) and address of a web service (e.g., Google

22   YouTube video, etc.).

23

24

25

26

27

28

---

COMPLAINT FOR PATENT INFRINGEMENT                                        CASE NO.

151.   The Adobe Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Adobe Spark's Website Builder integrates with third-party web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrate with payment providers like PayPal, and integrate with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add video sections to their website provided from a YouTube web service.

152.   Furthermore, each symbolic name has an associated data format class type corresponding to a subclass of defined UI objects, such as buttons, text fields, images, and videos, that supports the data format type of the symbolic name, and has a preferred UI object, such as a map display area for a map. For example, Adobe Website Builder's video web component relates to a set of inputs and outputs of the YouTube API, which is obtainable over a network (e.g., Internet).  The YouTube API can allow developers to use an embedded player to play videos directly in your app and customize the playback experience. *See, e.g.*, https://developers.google.com/youtube.  As shown below, Adobe promotes the use of YouTube

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

or Vimeo to allow users to "embed video from either YouTube or Vimeo as part of your story!" (*See* https://blogs.adobe.com/jkost/2016/04/embedding-video-into-an-adobe-slate.html).



153.    Adobe's Website Builder also stores an address of the web service. For example, the exemplary screenshot below shows that Adobe stores the web address of the YouTube web service for retrieving video content.  When the embedded YouTube video is clicked by the user, a request is made to a web address located at https://www.youtube.com/api



154.    The Adobe Accused Instrumentalities allow a Adobe user to define UI objects on their website.  For example, Adobe users select, using the Website Builder editor, content to be

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1  placed on their websites, such as text, input fields, buttons, images, and divs.  The UI objects

2  correspond to the web components included in the computer memory described above.  For

3  example, Adobe's Spark Website Builder editor allows users to define content on their website

4  for videos.  These UI objects correspond to the video web components.  These web components

5  include both inputs from and outputs to corresponding web services.

6      155.    Each defined UI object is automatically selected by the Accused Instrumentalities

7  as the preferred UI object corresponding to the symbolic name of the web component selected by

8  the user of the authoring tool.  For example, a "div" is automatically selected by the Adobe

9  Accused Instrumentalities as the preferred UI object for the YouTube web component.



21      156.    The Adobe Accused Instrumentalities select the symbolic names described above.

22  For example, Adobe's Website Builder is configured to generate a video section that includes a

23  video when a user selects to add a video section to their website.

24      157.    The Adobe Accused Instrumentalities associate the selected symbolic name with

25  defined UI object, where the selected symbolic name is only available to UI objects that support

26  the defined data format associated with that symbolic name. For example, the selected symbolic

27  name for the map web component is only available to the UI object that support the defined data

28

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

46

1    associated with that symbolic name and is not available in the UI object for other sections of the

2    web page.

3            158.    The Adobe Accused Instrumentalities store information representative of said

4    defined UI object and related settings in a database. For example, the presence of a database (or

5    databases) in Adobe's Website Builder is evidenced by, among other things, the saving of the

6    user selectable settings formatted in JavaScript Object Notation (JSON) to the backend server.

7    As seen below, shortly after a user selects a new text style for the tagline "Webpage Test"

8    Adobe's Spark Website Builder processes and saves the settings formatted in JSON. JSON is a

9    data format frequently used to store and query databases. *See, e.g.*,

10   https://www.infoworld.com/article/3222851/what-is-json-javascript-object-notation-

11   explained.html. Other user selected settings stored include theme, cover image, accent,

12   alignment, font, logo, among others.

13           159.    The Adobe Accused Instrumentalities build an application consisting of one or

14   more web page views from at least a portion of said database utilizing at least one player. For

15   example, the video section is built from at least a portion of the information in Adobe's

16   databases.  The settings selected by the user that are stored in Adobe's databases are used to

17   build the user's web pages reflecting those settings.

18           160.    The Adobe Accused Instrumentalities include a player that utilizes information

19   stored in said database to generate for the display of at least a portion of said one or more web

20   pages. For example, player code, such as HTML and JavaScript code, provided by Adobe

21   utilizes the information stored in the database for generating at least a portion of a user's web

22   pages on a browser by the browser's engine(s). The below exemplary screenshot of a web page

23   built by Adobe's Website Builder shows the utilizing information stored in said database to

24   generate for the display of at least a portion of said one or more web pages.

25

26

27

28

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105



161.    The Adobe Accused Instrumentalities provide the application and player to the device and executed on the device and when the application and player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object, the device provides the user provided one or more input values and corresponding input symbolic name to

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

the web service.  Adobe makes its customers' websites accessible to website visitors' devices. The website visitors connect to the website on their own devices which are supplied the application and player code described above.  The website visitors are then able to provide input values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The website provided by Adobe is designed such that when a website visitor provides input as described above, this input is provided to the web service.  For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

162.    The web service utilizes the input symbolic name and the user-provided one or more input values for generating one or more output values having an associated output symbolic name.  Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser.  For example, when a website visitor clicks on the YouTube video for "The Joy of Books," the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

163.    The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service.  The player then presents the received output values for display in the UI object.  For example, an output of the YouTube web service includes the actual played video which is then presented within the visitor's browser.

164.    The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Adobe Spark, Adobe Portfolio, and sample websites created using those and other Adobe platforms or Adobe Accused Products. *See, e.g.*, https://spark.adobe.com/make/website-builder/,

1    https://spark.adobe.com/sp/design/post/new?_branch_match_id=726534844216471899,

2    https://spark.adobe.com/page/Xg9Pl/, https://spark.adobe.com/page/ze6uWjcxUxIaF/,

3    https://blogging.com/website-builders/adobe-spark/, https://www.digitaltrends.com/web/how-to-

4    use-adobe-spark-page/; https://portfolio.adobe.com/; https://portfolio.adobe.com/examples;

5    https://portfolio.adobe.com/resources.

6          165.    On information and belief, the Adobe Accused Instrumentalities are used,

7    marketed, provided to, and/or used by or for Adobe's partners, clients, customers and end users

8    across the country and in this district.

9          166.    On information and belief, Adobe was made aware of the '044 patent and its

10   infringement thereof at least as early as of June 19, 2018 when it acquired Magento by virtue of

11   prior litigation between Express Mobile and Magento Solution Partners, including the first patent

12   infringement suit against Magento Solution Partners filed on July 15, 2016 and the fact that the

13   '044 patent had issued on March 27, 2018.  *See e.g., Express Mobile, Inc. v. Jiva Infotech, Inc.*

14   *d/b/a I95DEV*, 2-16-cv-00775, Dkt. no. 1 (E.D. Tex.) (Complaint dated July 15, 2016).  In

15   addition, on information and belief, Adobe was made aware of the '044 patent and its

16   infringement thereof at least as early as of June 19, 2018 when it acquired Magento by virtue of

17   prior litigation between Express Mobile and Magento, including the patent infringement suit

18   starting at least as early as May 15, 2017, when Magento sued Express Mobile and the fact that

19   the '044 patent had issued on March 27, 2018.  *See X Commerce, Inc. d/b/a Magento, Inc. v.*

20   *Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In

21   addition, on information and belief, Adobe was made aware of the '044 patent and its

22   infringement thereof at least as early as April 5, 2019 by virtue of Express Mobile providing

23   Magento (who had been acquired by Adobe as of that date) access to agreements relating to the

24   '044 patent during the course of the lawsuit between Express Mobile and Magento.  In addition,

25   on information and belief, Adobe was made aware of the '044 patent and its infringement thereof

26   at least since February 6, 2020 when Express Mobile provided notice of Adobe's infringement of

27   the'044 patent by letter.  Furthermore, Adobe has been aware of the '044 patent and its

28   infringement thereof since at least the filing of this complaint.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

167.    Upon information and belief, since at least the time Adobe received notice, Adobe has induced and continue to induce others to infringe at least one claim of the '044 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Adobe's partners, clients, customers, and end users, whose use of the Adobe Accused Instrumentalities constitutes direct infringement of at least one claim of the '044 patent.

168.    In particular, Adobe's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Adobe Accused Instrumentalities and providing instruction materials, training, and services regarding the Adobe Accused Instrumentalities.  Adobe actively encourages the adoption of the Adobe Accused Instrumentalities and provides support sites for the vast network of developers working with the Adobe Accused Instrumentalities.  On information and belief, Adobe has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Adobe has had actual knowledge of the '044 patent and knowledge that their acts were inducing infringement of the '044 patent since at least the date Adobe received notice that such activities infringed the '044 patent.

169.    Upon information and belief, since at least the time Adobe received notice, Adobe is liable as a contributory infringer of the '044 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '044 patent.  The Adobe Accused Instrumentalities are a material component for use in practicing the '044 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

170.    Upon information and belief, since at least the time Adobe received notice, Adobe's infringement of the '044 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct

1    amounted to infringement of the patent.  Adobe's infringing activities constitute egregious

2    infringement behavior beyond typical infringement.

3          171.    Express Mobile has complied with 35 U.S.C. § 287 with respect to the '044

4    patent.

5          172.    Express Mobile has been harmed by Adobe's infringing activities.

6          173.    Defendant's infringement has damaged and continues to damage and injure

7    Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Adobe is enjoined by

8    this Court from further infringement.

9          <u>**COUNT VI – MAGENTO'S INFRINGEMENT OF U.S. PATENT NO. 9,063,755**</u>

10         174.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to

11   173 above.

12         175.    Magento has manufactured, used, offered for sale, or sold programming

13   generation and distribution tools that infringe, either literally or under the doctrine of

14   equivalents, one or more claims of the '755 patent in violation of 35 U.S.C. § 271(a).  Magento's

15   infringement will continue unless enjoined by this Court.

16         176.    On information and belief, Magento has and continues to directly infringe at least

17   claim 12 of the '755 patent by practicing each claim limitation for displaying content on a

18   display of a device utilizing a registry of one or more web components related to inputs and

19   outputs of a web service.

20         177.    For example, Magento's Page Builder stores a registry of symbolic names

21   required to evoke a web component (e.g., video, etc.) and address of a web service (e.g.,

22   YouTube video, etc.).

23

24

25

26

27

28

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                          CASE NO.





178.    The Magento Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Magento Website Builder integrates with third-party web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrate with payment providers like PayPal, and integrate with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add YouTube Video images to their website provided from a YouTube web service, as shown above with Magento Page Builder's Video editing feature.  *See* Magento User Guide, https://docs.magento.com/user-guide/cms/page-builder-media-video.html (noting functionality to add videos from YouTube and Vimeo and noting that "[t]he URL of the Page Builder video that is featured in this example is: https://www.youtube.com/watch?v=Y0KNS7C5dZA).

179.    On information and belief, Magento's Website Builder also stores an address of the web service. For example, in the example discussed in the Magento User's Guide, it would be understood that the Magento Website Builder stores the web address of the YouTube web service for retrieving video content—this is evidenced by the fact that, in the example, the URL of the Page Builder video is https://www.youtube.com/watch?v=Y0KNS7C5dZA.  Thus, when

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1  the embedded YouTube video is clicked by the user, a request is made to a web address located

2  at https://www.youtube.com/.

3      180.   The Magento Accused Instrumentalities allow Magento users to define UI objects

4  on their website.  For example, Magento users select, using the Page Builder editor, content to be

5  placed on their websites, such as text, input fields, buttons, images, and divs.  The UI objects

6  correspond to the web components included in the computer memory described above.  For

7  example, Magento's Page Builder editor allows users to define content on their website for

8  videos.  These UI objects correspond to the video web components.  These web components

9  include both inputs from and outputs to corresponding web services.

10     181.   The Magento Accused Instrumentalities select the symbolic names described

11  above.  For example, Magento Page Builder is configured to generate a YouTube video object

12  upon a user's request. The selected symbolic name for the YouTube video web component is

13  associated with the UI object.

14     182.   The Magento Accused Instrumentalities produce an application including the

15  selected symbolic name of the defined UI object, where the application is a device-independent

16  code. For example, the YouTube video object that can be incorporated into a website is built

17  from at least a portion of the information in Magento's databases.  The settings selected by the

18  user that are stored in Magento's databases are used to build the user's web pages reflecting

19  those settings.

20     183.   The Magento Accused Instrumentalities produce a player, where the player is a

21  device-dependent code. In order for a site to display on different devices through a browser or

22  through responsive capabilities, there is device dependent code.  *See, e.g., X Commerce, Inc. v*

23  *Express Mobile, Inc*., Case No 17-cv-02605-RS, NDCA, DKT 79-5.

24     184.   The Magento Accused Instrumentalities provide the application and player to the

25  device and when the application and player are provided to the device and executed on the

26  device, and when the user of the device provides one or more input values associated with an

27  input symbolic name to an input of the defined UI object, the device provides the user provided

28  one or more input values and corresponding input symbolic name to the web service.  Magento

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                          CASE NO.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

makes its customers' websites accessible to website visitors' devices.  The website visitors connect to the website on their own devices which are supplied the application and player code described above.  The website visitors are then able to provide input values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The websites provided by Magento are designed such that when a website visitor provides input as described above, this input is provided to the web service.  For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

185.    The web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name.  Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser.  For example, when a website visitor clicks on the YouTube video for the video corresponding to the URL https://www.youtube.com/watch?v=Y0KNS7C5dZA, the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

186.    The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service.  The player then presents the received output values for display in the UI object.  For example, an output of the YouTube web service includes the actual played video which is then presented within the visitor's browser.

187.    The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Magento Commerce, Magento's Page Builder, and sample websites created using those and other Magento platforms or Magento

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1   Accused Products.  *See, e.g.*, https://magento.com/products/magento-commerce/page-builder,

2   https://magento.com/blog/best-practices/setting-yourself-success-page-builder,

3   https://magento.com/products/magento-commerce/page-builder,

4   https://magento.com/resources/supercharge-your-content-updates-page-builder,

5   https://docs.magento.com/user-guide/cms/page-builder.html, https://docs.magento.com/user-

6   guide/cms/page-builder-learn.html, https://docs.magento.com/user-guide/cms/page-builder-

7   tutorial1-simple-page.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial2-

8   blocks.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial3-catalog-

9   content.html, https://docs.magento.com/user-guide/cms/page-builder-setup.html,

10  https://docs.magento.com/user-guide/cms/page-builder-workspace.html,

11  https://docs.magento.com/user-guide/cms/page-builder-templates.html,

12  https://docs.magento.com/user-guide/cms/page-builder-layout.html,

13  https://docs.magento.com/user-guide/cms/page-builder-layout-row.html,

14  https://docs.magento.com/user-guide/cms/page-builder-layout-column.html,

15  https://docs.magento.com/user-guide/cms/page-builder-layout-tabs.html,

16  https://docs.magento.com/user-guide/cms/page-builder-elements.html,

17  https://docs.magento.com/user-guide/cms/page-builder-elements-text.html,

18  https://docs.magento.com/user-guide/cms/page-builder-elements-heading.html,

19  https://docs.magento.com/user-guide/cms/page-builder-elements-buttons.html,

20  https://docs.magento.com/user-guide/cms/page-builder-elements-divider.html,

21  https://docs.magento.com/user-guide/cms/page-builder-elements-html-code.html,

22  https://docs.magento.com/user-guide/cms/page-builder-media.html,

23  https://docs.magento.com/user-guide/cms/page-builder-media-image.html,

24  https://docs.magento.com/user-guide/cms/page-builder-media-video.html,

25  https://docs.magento.com/user-guide/cms/page-builder-media-banner.html,

26  https://docs.magento.com/user-guide/cms/page-builder-media-slider.html,

27  https://docs.magento.com/user-guide/cms/page-builder-media-map.html.

28

COMPLAINT FOR PATENT INFRINGEMENT                              CASE NO.

1    188.    On information and belief, Accused Instrumentalities are used, marketed,

2    provided to, and/or used by or for Magento's partners, clients, customers and end users across

3    the country and in this district.

4    189.    On information and belief, Magento was made aware of the '755 patent and its

5    infringement thereof at least as early as the filing by Express Mobile of the first patent

6    infringement suits against Magento Solution Partners on July 15, 2016.  *See e.g., Express*

7    *Mobile, Inc. v. Jiva Infotech, Inc. d/b/a I95DEV*, 2-16-cv-00775, Dkt. no. 1 (E.D. Tex.)

8    (Complaint dated July 15, 2016).  In addition, on information and belief, Magento was made

9    aware of the '755 patent and its infringement thereof at least as early as May 15, 2017 when it

10   sued Express Mobile.  *See X Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-

11   17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In addition, on information and

12   belief, Magento was also made aware of the '755 patent and its infringement thereof at least as

13   early as April 5, 2019 when, during the course of its lawsuit against Express Mobile, it received

14   access to agreements relating to the '755 patent.  In addition, Magento was made aware of the

15   '755 patent and its infringement thereof at least as early as November 23, 2020, when Magento

16   received a letter sent by Express Mobile on November 20, 2020, stating the same.  Furthermore,

17   Magento has been aware of the '755 patent and its infringement thereof since at least the filing of

18   this complaint.

19   190.    Upon information and belief, since at least the time Magento received notice,

20   Magento has induced and continue to induce others to infringe at least one claim of the '755

21   patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful

22   blindness, actively aiding and abetting others to infringe, including but not limited to Magento's

23   partners, clients, customers, and end users, whose use of the Magento Accused Instrumentalities

24   constitutes direct infringement of at least one claim of the '755 patent.

25   191.    In particular, Magento's actions that aid and abet others such as customers,

26   clients, partners, developers, and end users to infringe include advertising and distributing the

27   Magento Accused Instrumentalities and providing instruction materials, training, and services

28   regarding the Magento Accused Instrumentalities.  Magento actively encourages the adoption of

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

the Magento Accused Instrumentalities and provides support sites for the vast network of developers working with the Magento Accused Instrumentalities.  On information and belief, Magento has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Magento has had actual knowledge of the '755 patent and knowledge that their acts were inducing infringement of the '755 patent since at least the date Magento received notice that such activities infringed the '755 patent.

192.    Upon information and belief, since at least the time Magento received notice, Magento is liable as a contributory infringer of the '755 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '755 patent.  The Magento Accused Instrumentalities are a material component for use in practicing the '755 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

193.    Upon information and belief, since at least the time Magento received notice, Magento's infringement of the '755 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct amounted to infringement of the patent.  Magento's infringing activities constitute egregious infringement behavior beyond typical infringement.

194.    Express Mobile has complied with 35 U.S.C. § 287 with respect to the '755 patent.

195.    Express Mobile has been harmed by Magento's infringing activities.

196.    Magento's infringement has damaged and continues to damage and injure Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Magento is enjoined by this Court from further infringement.

## COUNT VII – MAGENTO'S INFRINGEMENT OF U.S. PATENT NO. 9,471,287

197.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 196 above.

198.    Magento has manufactured, used, offered for sale, or sold programming generation and distribution tools that infringe, either literally or under the doctrine of equivalents, one or more claims of the '287 patent in violation of 35 U.S.C. § 271(a).  Magento's infringement will continue unless enjoined by this Court.

199.    On information and belief, Magento has and continues to directly infringe at least claim 15 of the '287 patent by practicing each claim limitation for displaying content on a display of a device having a player.

200.    Upon information and belief, Magento has and continues to directly infringe at least claim 15 of the '287 patent by a system and method which includes a registry and an authoring tool or Player configured to define a User Interface ("UI") object for display on the device, where the UI object corresponds to a web component.  Each UI object is either: 1) selected by a user or 2) automatically selected by the system as a preferred UI object corresponding to a symbolic name of the web component and used to produce an Application, where the Application is a device-independent code and a Player, where the Player is a device-dependent code. The Application and Player enable 1) the device to provide one or more input values and corresponding input symbolic name to the web service and 2) the web service to utilize the input symbolic name and the user provided one or more input values to generate one or more output values having an associated output symbolic name, while 3) the Player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The Magento Accused Instrumentalities include Magento's website building tools that enable the functionality described above.

201.    Claim 15 of the '287 patent recites a method of displaying content on a display of a device having a Player, where the Player is a device-dependent code, the method comprising: defining a user interface (UI) object for presentation on the display, where the UI object corresponds to a web component included in a registry of one or more web components selected from a group consisting of an input of a web service and an output of the web service, where each web component includes a plurality of symbolic names of inputs and outputs associated

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

with each web service, and where the registry includes: a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs of the web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, and b) an address of the web service, and where each defined UI object is either:1) selected by a user of an authoring tool; 2) automatically selected by a system as a preferred UI object corresponding to a symbolic name of the web component selected by the user of the authoring tool.

202.    The Magento Accused Instrumentalities include a player, where the player is a device-dependent code. In order for a site to display on different devices through a browser or through responsive capabilities, there is device dependent code. *See, e.g., X Commerce, Inc. v Express Mobile, Inc.*, Case No 17-cv-02605-RS, NDCA, DKT 79-5.

203.    The Magento Accused Instrumentalities allow Adobe users to define UI objects on their website.  For example, Magento users select, using the Website Builder editor, content to be placed on their websites, such as text, input fields, buttons, images, and divs.  The UI objects correspond to the web components included in the computer memory described above.  For example, Magento's Page Builder editor allows users to define content on their website for videos.  These UI objects correspond to the video web components.  These web components include both inputs from and outputs to corresponding web services.

204.    The Accused Instrumentalities store a registry of symbolic names required to evoke a web component (e.g., video, etc.) and address of a web service (e.g., YouTube video, etc.).





205.     The Magento Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Magento's Page Builder integrates with third-party web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrates with payment providers like PayPal, and integrates with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add YouTube Video images to their website provided from a YouTube web service, as shown above with Magento Page Builder's Video editing feature.  *See* Magento User Guide, https://docs.magento.com/user-guide/cms/page-builder-media-video.html (noting functionality to add videos from YouTube and Vimeo and noting that "[t]he URL of the Page Builder video that is featured in this example is: https://www.youtube.com/watch?v=Y0KNS7C5dZA).

206.     Magento's Website Builder also stores an address of the web service. For example, in the example discussed in the Magento User's Guide, it would be understood that the Magento Website Builder stores the web address of the YouTube web service for retrieving video content—this is evidenced by the fact that, in the example, the URL of the Page Builder video is https://www.youtube.com/watch?v=Y0KNS7C5dZA.  Thus, when the embedded

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

YouTube video is clicked by the user, a request is made to a web address located at https://www.youtube.com/.

207.    Each defined UI object is automatically selected by the Accused Instrumentalities as the preferred UI object corresponding to the symbolic name of the web component selected by the user of the authoring tool.  For example, on information and belief, a "div" is automatically selected by the Magento Accused Instrumentalities as the preferred UI object for the YouTube web component.

208.    The Accused Instrumentalities select the symbolic names described above.  For example, Magento's Website Builder is configured to generate a video section that includes a YouTube video upon a user's request.

209.    The Magento Accused Instrumentalities associate the selected symbolic name with a defined UI object, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name. For example, the selected symbolic name for the map web component is only available to the UI object that supports the defined data associated with that symbolic name and is not available in the UI object for other sections of the web page.

210.    The Magento Accused Instrumentalities produce an application including the selected symbolic name of the defined UI object, where the application is a device-independent code. For example, the video section is built from at least a portion of the information in Magento's databases.  The settings selected by the user that are stored in Magento's databases are used to build the user's web pages reflecting those settings.

211.    The Magento Accused Instrumentalities provide the application and player to the device and when the application and player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object, the device provides the user provided one or more input values and corresponding input symbolic name to the web service.  Magento makes its customers' websites accessible to website visitors' devices.  The website visitors connect to the website on their own devices which are supplied the application and player code

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

described above.  The website visitors are then able to provide input values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The websites provided by Magento are designed such that when a website visitor provides input as described above, this input is provided to the web service.  For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

212.    The web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name.  Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser.  For example, when a website visitor clicks on the YouTube video for https://www.youtube.com/watch?v=Y0KNS7C5dZA, the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

213.    The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.  The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service.  The player then presents the received output values for display in the UI object.  For example, an output of the YouTube web service includes the played video that is then presented within the visitor's browser.

214.    The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Magento Commerce, Magento's Page Builder, and sample websites created using those and other Magento platforms or Magento Accused Products.  *See, e.g.*, https://magento.com/products/magento-commerce/page-builder, https://magento.com/blog/best-practices/setting-yourself-success-page-builder, https://magento.com/products/magento-commerce/page-builder,

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

https://magento.com/resources/supercharge-your-content-updates-page-builder, https://docs.magento.com/user-guide/cms/page-builder.html, https://docs.magento.com/user-guide/cms/page-builder-learn.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial1-simple-page.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial2-blocks.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial3-catalog-content.html, https://docs.magento.com/user-guide/cms/page-builder-setup.html, https://docs.magento.com/user-guide/cms/page-builder-workspace.html, https://docs.magento.com/user-guide/cms/page-builder-templates.html, https://docs.magento.com/user-guide/cms/page-builder-layout.html, https://docs.magento.com/user-guide/cms/page-builder-layout-row.html, https://docs.magento.com/user-guide/cms/page-builder-layout-column.html, https://docs.magento.com/user-guide/cms/page-builder-layout-tabs.html, https://docs.magento.com/user-guide/cms/page-builder-elements.html, https://docs.magento.com/user-guide/cms/page-builder-elements-text.html, https://docs.magento.com/user-guide/cms/page-builder-elements-heading.html, https://docs.magento.com/user-guide/cms/page-builder-elements-buttons.html, https://docs.magento.com/user-guide/cms/page-builder-elements-divider.html, https://docs.magento.com/user-guide/cms/page-builder-elements-html-code.html, https://docs.magento.com/user-guide/cms/page-builder-media.html, https://docs.magento.com/user-guide/cms/page-builder-media-image.html, https://docs.magento.com/user-guide/cms/page-builder-media-video.html, https://docs.magento.com/user-guide/cms/page-builder-media-banner.html, https://docs.magento.com/user-guide/cms/page-builder-media-slider.html, https://docs.magento.com/user-guide/cms/page-builder-media-map.html.

215.    On information and belief, Magento was made aware of the '287 patent and its infringement thereof at least as early as October 18, 2016 when the '287 patent issued by virtue of the filing by Express Mobile of the first patent infringement suits against Magento Solution Partners on July 15, 2016.  *See e.g., Express Mobile, Inc. v. Jiva Infotech, Inc. d/b/a I95DEV*, 2-

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

16-cv-00775, Dkt. no. 1 (E.D. Tex.) (Complaint dated July 15, 2016).  In addition, on information and belief, Magento was made aware of the '287 patent and its infringement thereof at least as early as May 15, 2017 when it sued Express Mobile.  *See X Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In addition, on information and belief, Magento was also made aware of the '287 patent and its infringement thereof at least as early as April 5, 2019, when, during the course of its lawsuit against Express Mobile, it received access to agreements relating to the '287 patent.  In addition, Magento was made aware of the '287 patent and its infringement thereof at least as early as November 23, 2020, when Magento received a letter sent by Express Mobile on November 20, 2020, stating the same.  Furthermore, Magento has been aware of the '287 patent and its infringement thereof since at least the filing of this complaint.

216.    Upon information and belief, since at least the time Magento received notice, Magento has induced and continues to induce others to infringe at least one claim of the '287 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Magento's partners, clients, customers, and end users, whose use of the Magento Accused Instrumentalities constitutes direct infringement of at least one claim of the '287 patent.

217.    In particular, Magento's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Magento Accused Instrumentalities and providing instruction materials, training, and services regarding the Magento Accused Instrumentalities.  Magento actively encourages the adoption of the Magento Accused Instrumentalities and provides support sites for the vast network of developers working with the Accused Instrumentalities.  On information and belief, Magento has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Magento has had actual knowledge of the '287 patent and knowledge that their acts were inducing infringement of the '287 patent since at least the date Magento received notice that such activities infringed the '287 patent.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

218.     Upon information and belief, since at least the time Magento received notice, Magento is liable as a contributory infringer of the '287 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States website or web page authoring tools to be especially made or adapted for use in an infringement of the '287 patent.  The Magento Accused Instrumentalities are a material component for use in practicing the '287 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

219.     Upon information and belief, since at least the time Magento received notice, Magento's infringement of the '287 patent has been willful because it knew about the patent-in-suit, engaged in infringing activities with specific intent to infringe or willful blindness to its infringement, continues to infringe the patent, and knew or should have known that its conduct amounted to infringement of the patent.  Magento's infringing activities constitute egregious infringement behavior beyond typical infringement.

220.     Express Mobile has complied with 35 U.S.C. § 287 with respect to the '287 patent.

221.     Express Mobile has been harmed by Magento's infringing activities.

222.     Defendant's infringement has damaged and continues to damage and injure Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Magento is enjoined by this Court from further infringement.

**COUNT VIII – MAGENTO'S INFRINGEMENT OF U.S. PATENT NO. 9,928,044**

223.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 222 above.

224.     Upon information and belief, Magento has and continues to directly infringe at least claim 15 of the '044 patent by a method which includes a computer memory and an authoring tool.  The computer memory stores symbolic names required for evoking a web component related to a web service and an address of the web service. The authoring tool is configured to define a User Interface ("UI") object for display on the device, where the UI object corresponds to a web component.  Each UI object is either: 1) selected by a user or 2)

automatically selected by the system as a preferred UI object corresponding to a symbolic name of the web component. The information representative of the UI object and related settings are stored in a database. An application is built consisting web page views. The application and a player are provided to a device and enables the device to provide one or more input values and corresponding input symbolic name to the web service and the web service to utilize the input symbolic name and the user provided one or more input values to generate one or more output values having an associated output symbolic name, while the player receives the output symbolic name and corresponding one or more output values and provide instructions for the display of the device to present an output value in the defined UI object. (The "Accused Instrumentalities"). The Magento Accused Instrumentalities include the Magento Page Builder that enables the functionality described above.

225.    Claim 15 of the '044 patent recites a method of displaying content on a display of a device having a Player, where the Player is a device-dependent code, the method comprising: defining a user interface (UI) object for presentation on the display, where the UI object corresponds to a web component included in a registry of one or more web components selected from a group consisting of an input of a web service and an output of the web service, where each web component includes a plurality of symbolic names of inputs and outputs associated with each web service, and where the registry includes: a) symbolic names required for evoking one or more web components each related to a set  of inputs and outputs of the web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service, and b) an address of the web service, and where each defined UI object is either:1) selected by a user of an authoring tool; 2) automatically selected by a system as a preferred UI object corresponding to a symbolic name of the web component selected by the user of the authoring tool.

226.    Defendant Magento has manufactured, used, offered for sale, or sold programming generation and distribution tools that infringe, either literally or under the doctrine of equivalents, one or more claims of the '044 patent in violation of 35 U.S.C. § 271(a). Magento's infringement will continue unless enjoined by this Court.

227.    On information and belief, Magento has and continues to directly infringe at least claim 15 of the '044 patent by practicing each claim limitation for displaying content on a display of a device having a player and non-volatile memory storing symbolic names required for evoking one or more web components each related to inputs and outputs of a web service.

228.    For example, Magento's Website Builder stores a registry of symbolic names required to evoke a web component (e.g., video, etc.) and address of a web service (e.g., Google YouTube video, etc.).





229.    The Magento Accused Instrumentalities include the ability to select web components for display on a web page.  Users can add content to their website accessible by symbolic names.  This content includes web components that relate to inputs and outputs of web services over the Internet.  For example, Magento's Page Builder integrates with third-party web services such as YouTube, Vimeo, Facebook, Instagram, among others, integrate with payment providers like PayPal, and integrate with additional web services such as Appointments & Services, Calendar, among others.  For example, a user can add video sections to their website provided from a YouTube web service.

230.    Furthermore, each symbolic name has an associated data format class type corresponding to a subclass of defined UI objects, such as buttons, text fields, images, and videos, that supports the data format type of the symbolic name, and has a preferred UI object,

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1   such as a map display area for a map.  For example, Magento Page Builder's video web

2   component relates to a set of inputs and outputs of the YouTube API, which is obtainable over a

3   network (e.g., Internet).  The YouTube API can allow developers to use an embedded player to

4   play videos directly in your app and customize the playback experience. *See, e.g.*,

5   https://developers.google.com/youtube.  As shown below, Magento promotes the use of

6   YouTube or Vimeo to allow users to "add a video that is hosted on YouTube or Vimeo to the

7   stage." (*See* https://docs.magento.com/user-guide/cms/page-builder-media-video.html).

8   Use the Video content type to add a video that is hosted on YouTube⧉ or Vimeo⧉ to the stage. It's easy to embed video in a page or block,
9   as well as in product and category descriptions.



*Video on Home Page*

18   231.   Magento's Page Builder also stores an address of the web service.  For example,

19   in the example discussed in the Magento User's Guide, it would be understood that the Magento

20   Website Builder stores the web address of the YouTube web service for retrieving video

21   content—this is evidenced by the fact that, in the example, the URL of the Page Builder video is

22   https://www.youtube.com/watch?v=Y0KNS7C5dZA.  Thus, when the embedded YouTube

23   video is clicked by the user, a request is made to a web address located at

24   https://www.youtube.com/.

25   232.   The Magento Accused Instrumentalities allow a Magento user to define UI

26   objects on their website.  For example, Magento users select, using the Website Builder editor,

27   content to be placed on their websites, such as text, input fields, buttons, images, and divs.  The

28   UI objects correspond to the web components included in the computer memory described

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

above. For example, Magento's Page Builder editor allows users to define content on their website for videos. These UI objects correspond to the video web components. These web components include both inputs from and outputs to corresponding web services.

233. Each defined UI object is automatically selected by the Accused Instrumentalities as the preferred UI object corresponding to the symbolic name of the web component selected by the user of the authoring tool. For example, on information and belief, a "div" is automatically selected by the Magento Accused Instrumentalities as the preferred UI object for the YouTube web component.

234. The Magento Accused Instrumentalities select the symbolic names described above. For example, Magento's Page Builder is configured to generate a video section that includes a video when a user selects to add a video section to their website.

235. The Magento Accused Instrumentalities associate the selected symbolic name with a defined UI object, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name. For example, the selected symbolic name for the map web component is only available to the UI object that support the defined data associated with that symbolic name and is not available in the UI object for other sections of the web page.

236. The Magento Accused Instrumentalities store information representative of said defined UI object and related settings in a database. For example, on information and belief, the presence of a database (or databases) in Adobe's Website Builder is evidenced by, among other things, the saving of the user selectable settings formatted in JavaScript Object Notation (JSON) to the backend server. On information and belief, when users select settings in Magento's Page Builder, the Page Builder processes and saves the settings formatted in JSON. JSON is a data format frequently used to store and query databases. *See, e.g.*, https://www.infoworld.com/article/3222851/what-is-json-javascript-object-notation-explained.html.

237. The Magento Accused Instrumentalities build an application consisting of one or more web page views from at least a portion of said database utilizing at least one player. For

example, the video section is built from at least a portion of the information in Magento's

databases.  The settings selected by the user that are stored in Magento's databases are used to

build the user's web pages reflecting those settings.

238.    The Magento Accused Instrumentalities include a player that utilizes information

stored in said database to generate for the display of at least a portion of said one or more web

pages. For example, player code, such as HTML and JavaScript code, provided by Magento

utilizes the information stored in the database for generating at least a portion of a user's web

pages on a browser by the browser's engine(s). The below exemplary screenshot of a web page

built by Magento's Website Builder shows the utilizing information stored in said database to

generate for the display of at least a portion of said one or more web pages.



239.    The Magento Accused Instrumentalities provide the application and player to the

device and executed on the device and when the application and player are provided to the

device and executed on the device, and when the user of the device provides one or more input

values associated with an input symbolic name to an input of the defined UI object, the device

provides the user provided one or more input values and corresponding input symbolic name to

the web service.  Magento makes its customers' websites accessible to website visitors' devices.

The website visitors connect to the website on their own devices which are supplied the

application and player code described above.  The website visitors are then able to provide input

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

values (e.g., typed text, mouse clicks, button clicks, touches, swipes, etc.) to an input of the defined UI object associated with an input symbolic name. The website provided by Magento is designed such that when a website visitor provides input as described above, this input is provided to the web service. For example, when a website visitor clicks buttons, types text, touches a touch screen, or swipes the screen, these inputs are transmitted along with a corresponding input symbolic name to the web service through an HTTP request protocol, such as a POST or GET method call, over the Internet.

240. The web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name. Based on the received input from a website visitor as described above, the web service generates an output to send to the visitor's browser. For example, when a website visitor clicks on the YouTube video for https://www.youtube.com/watch?v=Y0KNS7C5dZA, the YouTube web service receives an indication of the click (input), and in response generates output values including the data that allows the video to be played on the website visitor's screen.

241. The player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object. The player, described above, receives the output values such as video data and result codes, and associated symbolic name in an HTTP response from the web service. The player then presents the received output values for display in the UI object. For example, an output of the YouTube web service includes the actual played video which is then presented within the visitor's browser.

242. The presence of the above referenced elements is further demonstrated, by way of example, by reference to publicly available information about Magento Commerce, Magento's Page Builder, and sample websites created using those and other Magento platforms or Magento Accused Products. *See, e.g.*, https://magento.com/products/magento-commerce/page-builder, https://magento.com/blog/best-practices/setting-yourself-success-page-builder, https://magento.com/products/magento-commerce/page-builder, https://magento.com/resources/supercharge-your-content-updates-page-builder,

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

1  https://docs.magento.com/user-guide/cms/page-builder.html, https://docs.magento.com/user-

2  guide/cms/page-builder-learn.html, https://docs.magento.com/user-guide/cms/page-builder-

3  tutorial1-simple-page.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial2-

4  blocks.html, https://docs.magento.com/user-guide/cms/page-builder-tutorial3-catalog-

5  content.html, https://docs.magento.com/user-guide/cms/page-builder-setup.html,

6  https://docs.magento.com/user-guide/cms/page-builder-workspace.html,

7  https://docs.magento.com/user-guide/cms/page-builder-templates.html,

8  https://docs.magento.com/user-guide/cms/page-builder-layout.html,

9  https://docs.magento.com/user-guide/cms/page-builder-layout-row.html,

10 https://docs.magento.com/user-guide/cms/page-builder-layout-column.html,

11 https://docs.magento.com/user-guide/cms/page-builder-layout-tabs.html,

12 https://docs.magento.com/user-guide/cms/page-builder-elements.html,

13 https://docs.magento.com/user-guide/cms/page-builder-elements-text.html,

14 https://docs.magento.com/user-guide/cms/page-builder-elements-heading.html,

15 https://docs.magento.com/user-guide/cms/page-builder-elements-buttons.html,

16 https://docs.magento.com/user-guide/cms/page-builder-elements-divider.html,

17 https://docs.magento.com/user-guide/cms/page-builder-elements-html-code.html,

18 https://docs.magento.com/user-guide/cms/page-builder-media.html,

19 https://docs.magento.com/user-guide/cms/page-builder-media-image.html,

20 https://docs.magento.com/user-guide/cms/page-builder-media-video.html,

21 https://docs.magento.com/user-guide/cms/page-builder-media-banner.html,

22 https://docs.magento.com/user-guide/cms/page-builder-media-slider.html,

23 https://docs.magento.com/user-guide/cms/page-builder-media-map.html.

24     243.    On information and belief, the Magento Accused Instrumentalities are used,

25 marketed, provided to, and/or used by or for Magento's partners, clients, customers and end

26 users across the country and in this district.

27     244.    On information and belief, Magento was made aware of the '044 patent and its

28 infringement thereof at least as early as March 27, 2018 when the '044 patent issued by virtue of

STEPTOE & JOHNSON LLP
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

the filing by Express Mobile of the first patent infringement suits against Magento Solution Partners on July 15, 2016.  *See e.g., Express Mobile, Inc. v. Jiva Infotech, Inc. d/b/a I95DEV*, 2-16-cv-00775, Dkt. no. 1 (E.D. Tex.) (Complaint dated July 15, 2016).  In addition, on information and belief, Magento was made aware of the '044 patent and its infringement thereof at least as early as March 27, 2018 when the '044 patent issued by virtue of its prior lawsuit against Express Mobile.  *See X Commerce, Inc. d/b/a Magento, Inc. v. Express Mobile, Inc.*, No. 3-17-cv-02605 (N.D. Cal.) (Complaint dated May 15, 2017).  In addition, on information and belief, Magento was also made aware of the '044 patent and its infringement thereof at least as early as April 5, 2019 when, during the course of its lawsuit against Express Mobile, it received access to agreements relating to the '044 patent.  In addition, Magento was made aware of the '044 patent and its infringement thereof at least as early as November 23, 2020, when Magento received a letter sent by Express Mobile on November 20, 2020, stating the same.  Furthermore, Magento has been aware of the '044 patent and its infringement thereof since at least the filing of this complaint.

245.    Upon information and belief, since at least the time Magento received notice, Magento has induced and continue to induce others to infringe at least one claim of the '044 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Magento's partners, clients, customers, and end users, whose use of the Magento Accused Instrumentalities constitutes direct infringement of at least one claim of the '044 patent.

246.    In particular, Magento's actions that aid and abet others such as customers, clients, partners, developers, and end users to infringe include advertising and distributing the Magento Accused Instrumentalities and providing instruction materials, training, and services regarding the Magento Accused Instrumentalities.  Magento actively encourages the adoption of the Magento Accused Instrumentalities and provides support sites for the vast network of developers working with the Magento Accused Instrumentalities.  On information and belief, Magento has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Magento has had actual knowledge of the '044

1   patent and knowledge that their acts were inducing infringement of the '044 patent since at least

2   the date Magento received notice that such activities infringed the '044 patent.

3      247.   Upon information and belief, since at least the time Magento received notice,

4   Magento is liable as a contributory infringer of the '044 patent under 35 U.S.C. § 271(c) by

5   offering to sell, selling and importing into the United States website or web page authoring tools

6   to be especially made or adapted for use in an infringement of the '044 patent.  The Magento

7   Accused Instrumentalities are a material component for use in practicing the '044 patent and are

8   specifically made and are not a staple article of commerce suitable for substantial non-infringing

9   use.

10     248.   Upon information and belief, since at least the time Magento received notice,

11  Magento's infringement of the '044 patent has been willful because it knew about the patent-in-

12  suit, engaged in infringing activities with specific intent to infringe or willful blindness to its

13  infringement, continues to infringe the patent, and knew or should have known that its conduct

14  amounted to infringement of the patent.  Magento's infringing activities constitute egregious

15  infringement behavior beyond typical infringement.

16     249.   Express Mobile has complied with 35 U.S.C. § 287 with respect to the '044

17  patent.

18     250.   Express Mobile has been harmed by Magento's infringing activities.

19     251.   Defendant's infringement has damaged and continues to damage and injure

20  Plaintiff.  Plaintiff's injury is irreparable and will continue unless and until Magento is enjoined

21  by this Court from further infringement.

22                          **PRAYER FOR RELIEF**

23     WHEREFORE, Plaintiff requests that the Court enter judgment for Plaintiff and against

24  Adobe and Magento as follows:

25     A.   That U.S. Patent Nos. 6,546,397, 7,594,168, 9,063,755, 9,471,287 and 9,928,044 be

26         judged valid, enforceable, and infringed by Adobe and Magento;

27     B.   That the Court permanently enjoin Adobe and Magento, their officers, partners,

28         agents, servants, employees, parents, subsidiaries, divisions, affiliate corporations,

**STEPTOE & JOHNSON LLP**
One Market Plaza, Spear Tower, Suite 3900
San Francisco, CA 94105

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

joint ventures, other related business entities and all other persons acting in concert, participation, or in privity with them, and their successors and assigns, from any commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States of the Adobe Accused Instrumentalities, the Magento Accused Instrumentalities, and any product that infringes the '168, '755, '287, and/or '044 patents prior to the expiration of the '168, '755, '287, and/or '044;

C. That Plaintiff be awarded judgment against Adobe and Magento for damages together with interests and costs fixed by the Court including an accounting of all infringements and/or damages not presented at trial;

D. That the Court declare this an exceptional case and award Plaintiff its attorneys' fees, as provided by 35 U.S.C. § 285;

E. That Plaintiff be awarded such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a jury trial on all issues so triable.

Respectfully submitted,

DATED:  November 24, 2020

STEPTOE & JOHNSON LLP

By:      */s/ Laurie Edelstein*

Laurie Edelstein (CA Bar #164466)
STEPTOE & JOHNSON LLP
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
Telephone: (415) 365-6700
ledelstein@steptoe.com

James R. Nuttall (*pro hac vice* to be filed)
Michael Dockterman (*pro hac vice* to be filed)
Katherine H. Johnson (*pro hac vice* to be filed)
Tron Fu (*pro hac vice* to be filed)
Robert F. Kappers (*pro hac vice* to be filed)
STEPTOE & JOHNSON LLP
227 West Monroe Street, Suite 4700
Chicago, IL 60606

Telephone: (312) 577-1300
Facsimile: (312) 577-1370
jnuttall@steptoe.com
mdockterman@steptoe.com
kjohnson@steptoe.com
tfu@steptoe.com
rkappers@steptoe.com

Christopher A. Suarez (*pro hac vice* to be filed)
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile:  (202) 429-3902
csuarez@steptoe.com

Timothy Devlin (*pro hac vice* to be filed)
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251
tdevlin@devlinlawfirm.com

*Attorneys for Plaintiff Express Mobile, Inc.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**STEPTOE & JOHNSON LLP**
**One Market Plaza, Spear Tower, Suite 3900**
**San Francisco, CA 94105**

COMPLAINT FOR PATENT INFRINGEMENT

CASE NO.